UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CARLA K.,**[1]

    **Plaintiff,**

v.

                                                 Case No. 3:20-cv-0261
                                                 Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carla K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

On October 22, 2014, Plaintiff filed her application for benefits, alleging that she has been disabled since August 12, 2014. R. 162-63.[3] Plaintiff later amended that disability onset date to August 12, 2012. R. 892. The application was denied following an administrative hearing, and Plaintiff sought review of that decision in this Court. *K[.] v. Commissioner of Social Security*, 3:18-cv-0042 (S.D. Ohio). This Court reversed the Commissioner's decision, upon joint motion of the parties, and remanded the matter to the Commissioner "for further proceedings." *Id*. at PageID# 931; R. 941-45. Administrative Law Judge ("ALJ") Gregory G. Kenyon held a second administrative hearing on April 16, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 889-914. In a decision dated June 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her amended alleged disability onset date of August 12, 2012, through the date of that decision. R. 865-80. The Appeals Council declined further review on April 30, 2020. R. 856-61. Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.      LEGAL STANDARD

    A.    **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v.*

---

[3] The Court will refer to pages in the Certified Administrative Record as "R. __," using the pagination as it appears in the Certified Administrative Record.

*Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 41 years old on her amended alleged disability onset date. R. 878. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 867.

At step two, the ALJ found that Plaintiff's residuals of West Nile encephalitis, an anxiety disorder, and a depressive disorder were severe impairments. R. 867. The ALJ also found that Plaintiff's documented hypertension and endometriosis were not severe impairments. R. 868.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 868.

At step four, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels but with the following non-exertional limitations:

> (1) no climbing of ladders, ropes, and scaffolds; (2) no work around hazards such as unprotected heights or dangerous machinery; (3) no driving of automotive equipment; (4) limited to indoor work; (5) no concentrated exposure to loud noise; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with co-workers and supervisors; (8) no public contact; (9) no fast paced production work or jobs which involve strict production quotas; and (10) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the

next; and (11) no occupational exposure to alcohol.

R. 869. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work. R. 878.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of unskilled jobs at the light level of exertion—*e.g.,* jobs as an office mail clerk, copy machine operator, and office helper—existed in the national economy and could be performed by Plaintiff. R. 879-80. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her amended alleged disability onset date of August 12, 2012, through the date of the decision. R. 880.

Plaintiff disagrees with that decision, arguing that the ALJ erred in failing to according controlling or deferential weight to the opinions of her treating physician, Heather Jackson, D.O. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 14.

**IV.     RELEVANT EVIDENCE**

Plaintiff was diagnosed with West Nile encephalitis in August 2012, manifested by fever, rash, confusion, body aches, nausea, headache, congestion, cough, sore throat, weakness, and dizziness. R. 292, 306. Maryann P. Bhat, M.D., Plaintiff's treating physician at the time, saw Plaintiff on follow-up on August 31, 2012. R. 416. Her husband reported that Plaintiff was

6

"much better in the past 3 days." *Id*. However, Plaintiff reported dizziness, tremors, speech difficulty, weakness and headaches, and she presented as "nervous/anxious." *Id.* On examination, Dr. Bhat noted, *inter alia*, a normal mood, affect, judgment, and thought content. R. 417. On September 10, 2012, Dr. Bhat found Plaintiff to be alert, and displaying normal reflexes and coordination. R. 438. She was "doing much better." *Id*.  At an office visit the following month, Plaintiff reported fatigue and headaches. R. 445. Dr. Bhat noted normal neurological findings and a normal mood, affect, and behavior, although Plaintiff deferred to her husband to answer many questions. R. 446. According to Dr. Bhat, Plaintiff was "[n]ot cognitively well enough to return to norm[al] full time function yet." *Id*. Dr. Bhat saw Plaintiff again in follow-up in November 2012 and commented, "doing much better. Back to normal except fatigue. Will check with neurology about return to work." R. 461. In December 2012, Plaintiff reported sleep disturbance, dizziness and fatigue, although "headaches are better." R. 465.

Plaintiff next saw Dr. Bhat in July 2013. Diagnoses included depression, West Nile encephalitis, malaise and fatigue. R. 469. She reported "slight headaches" and "[s]till tired." R. 470. On examination, Plaintiff had a normal mood and affect. R. 471. Her Paxil was reduced. *Id*. At a routine general medical examination in September 2013, Plaintiff reported headaches "(overall better)," no dizziness, and no sleep problems. R. 476. Dr. Bhat noted a normal musculoskeletal, neurological, and psychiatric examination; Plaintiff was "doing well." R. 477.

In March 2014, Plaintiff reported that she had quit her job and was experiencing panic attacks and "lots of anxiety." R. 493. She was not sleeping well and had decreased concentration and agitation. R. 494. On clinical examination, Plaintiff was alert and oriented, but was tearful, anxious, and sad. *Id*. Dr. Bhat prescribed Paxil, Restoril, and Xanax. R. 496.

In January 2015, Katherine A. Myers, Psy.D., conducted a consultative psychological examination of Plaintiff at the request of the state agency. Dr. Myers opined that Plaintiff "is likely to have some difficulties with job related tasks due to mental health problems." R. 396. On examination of Plaintiff's mental status, Dr. Myers reported that Plaintiff's interaction during the examination was adequate. *Id*. Her speech was normal and her thought processes were logical, organized, coherent, and goal directed. R. 397. Her mood was "mildly anxious" with a congruent affect. She complained of decreased energy, decreased libido, anhedonia, poor attention and sleep interruption. *Id.* Plaintiff reported worry, panic attacks, and difficulty in public places, and Dr. Myers noted some motor manifestations of anxiety. *Id*. Plaintiff was oriented, she was able to understand and follow directions, and she performed in the average range on memory/recall tasks. *Id.* Her attention and concentration were fair. *Id.* Her insight and judgment were good. *Id.* Dr. Myers diagnosed unspecified anxiety disorder and unspecified depressive disorder. R.398. In addressing Plaintiff's abilities and limitations in engaging in work-related activities, Dr. Myers opined that Plaintiff "is able to apply instructions requiring low average intellectual functioning," R. 398, was "fleetingly able to concentrate on questions and tasks," *id.*, and "is likely to show a pattern of periods of time away from work for mental health reasons." R. 399. Her reported problems with fatigue "will likely affect her persistence and pace." *Id*. She is "likely to respond appropriately to coworkers in a work setting, but her "ongoing depressive and anxiety symptoms appear to have diminished her stress tolerance." *Id*.

In January 2015, Plaintiff was also consultatively examined, at the request of the state agency, by Amita Oza, M.D. Plaintiff reported that she had initially "recovered almost completely" from the West Nile infection, but since then has been feeling "extremely nervous at home or going outside." R. 402. On physical examination, Plaintiff was alert and oriented times

three, and findings were otherwise normal. Dr. Oza opined, "[Plaintiff] appears to have extreme anxiety and depression, which is not controlled on current regimen. Medically speaking, she is stable and can perform work provided her psychiatric problems are taken care of." R. 403.

Dr. Jackson first saw Plaintiff on May 8, 2015. R. 499. On clinical examination, Dr. Jackson noted normal judgment and thought content; cognition and memory–both recent and remote–were normal and unimpaired, and Plaintiff was described as "attentive." R. 501. Her mood was depressed.

Dr. Jackson reported on that same date that Plaintiff's symptoms consisted of tiredness, headaches, anxiety around crowds, memory loss, and weakness. R. 411. According to Dr. Jackson, Plaintiff had difficulty in "sit[ting] for long periods," found it "very hard to be in crowds or with more than 2 people at once without anxiety," experienced "[d]ifficulty with comprehension – hard to follow directions & commands," and suffered "[c]hronic headaches." *Id*.

Dr. Jackson saw Plaintiff in February 2016 for refill of medications. R. 683. Plaintiff complained of "mood instability without medication." *Id*. She reported sadness, anxiousness and sometimes feeling overwhelmed, but she reported no difficulty with sleep or loss of interest in usual activities. *Id*. On clinical examination, Dr. Jackson noted a normal mood and affect, behavior, and judgment and thought content. R. 685. On May 19, 2016, Dr. Jackson saw Plaintiff for complaints of headache and muscle spasm. R. 690, 693. Plaintiff reported chronic headaches with associated nausea and photophobia since the West Nile encephalitis infection, for which she took over the counter medication but with minimal relief. *Id*. She was also experiencing recent difficulty with sleep and loss of interest in usual activities. *Id*. Her psychiatric examination was normal. R. 692.

On May 19, 2016, Dr. Jackson also completed a form entitled "Impairment Questionnaire," in which she indicated that Plaintiff suffers from headaches and fatigue, and has difficulty with concentration and high anxiety in social situations. R. 702. Plaintiff's signs and symptoms included poor memory, sleep and mood disturbance, recurrent panic attacks, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, and generalized persistent anxiety. *Id.* Dr. Jackson commented that Plaintiff was "extremely anxious, tearful. Difficulty with recall." *Id.* According to Dr. Jackson, Plaintiff's impairment had lasted at least 12 months, and her psychiatric condition exacerbates her headache pain. R. 703. Her impairments would cause her to be absent from work more than three times a month and to be distracted 2/3 of an 8-hour workday. *Id.* Plaintiff could not perform full time competitive work over a sustained basis. R. 704.[4]

In January 2017, Lisa Heinemeyer-Foster, M.D., saw Plaintiff for her annual exam and medication check. R. 1132. Plaintiff reported severe anxiety since contracting the West Nile virus. R. 1139. Her anxiety keeps her awake, she avoids people and has panic attacks, although she had stopped taking her Paxil and Effexor because she believed that the medication was not helping her conditions. *Id.* On clinical examination, Dr. Heinemeyer-Foster found that Plaintiff was alert and oriented; her mood was anxious and she was agitated. *Id.* Dr. Heinemeyer-Foster recommended counseling and adjusted Plaintiff's medication. R. 1140. In March 2017, Plaintiff reported that her mental health problem, with associated fatigue and headaches, occurs daily but has been gradually improving. R. 1153. Medication provides only mild relief. *Id*. On clinical examination, Plaintiff was alert and oriented; her mood was anxious. *Id*. In an August 2017 follow-up, Plaintiff complained of confusion, depressed mood, excessive worry,

---

[4] A duplicate of this form appears at R. 853-55.

10

hyperventilation, insomnia, irritability, malaise, nervous/anxious behavior, obsessions, panic and restlessness. R. 1170-71. However, it was also reported that Plaintiff was drinking alcohol while taking her medication, and that she did not always take her medication as prescribed. R. 1171. On clinical examination, Plaintiff was alert, her mood was anxious, her affect was labile, her speech was tangential and she was agitated. *Id*. At an October 2017 follow-up visit, Plaintiff reported severe anxiety, but no confusion or decreased concentration. R. 1203. She was alert and oriented, and her mood, affect, and behavior were normal. R. 1212.

In March 2018, Plaintiff began psychotherapy at ThinkWell Counseling Center. R. 1105. On intake, Plaintiff's insight and judgment were good, her affect was appropriate, but her mood was depressed. *Id.* She was oriented; her remote memory was poor. *Id*. She was distractible; her thought content was appropriate. *Id.* Plaintiff reported daily depression, anxiety, and alcohol use. R. 1106. She was diagnosed with major depressive disorder, recurrent episode, moderate; and alcohol use disorder, moderate. R. 1108. At following therapy sessions, Plaintiff was oriented and alert, her mood was euthymic, her affect was appropriate, and her functional status was intact. R. 1109, 1111, 1114, 1116, 1118, 1120, 1123, 1125, 1127, 1130. In January 2019, it was noted that Plaintiff "had decreased or eliminated alcohol use and no longer meets the criteria for an Alcohol Use Disorder." R. 1107.

In March 2018, Plaintiff reported to Dr. Heinemeyer-Foster that psychotherapy had resulted in "some benefit." R. 1225. On examination, Dr. Heinemeyer-Foster found Plaintiff to be alert and oriented; her speech, behavior, and thought content were normal but her mood was anxious. *Id*. Findings were similar in September of that year, R. 1258, although Plaintiff reported more depression and less motivation. R. 1267. Her medications were increased. *Id*.

11

In February 2019, Plaintiff reported fatigue and headaches "for the last 4 months or so" to Dr. Heinemeyer-Foster. R. 1287. Neurological and psychiatric examinations were normal. R. 1288.

At the April 2019 administrative hearing, Plaintiff testified that she experiences migraine headaches about twice a week. R. 896. Light from computer screens or the TV can trigger the headaches. R. 908. The headaches cause photophobia and last two to three hours. *Id.* When her anxiety gets bad (about four times per week), she becomes dizzy for 15-20 minutes and must sit or lie down. R. 898. She also has problems with her short term and long term memory: her husband must help her with her medication. R. 899. She also has trouble with concentration, which causes difficulty in driving or cooking. R. 900. She is fatigued and naps two to three hours during the day, for a total of 13 hours of sleep. R. 900-01. She gets upset easily, cannot sit still, and has two panic attacks per week. R. 902. She has difficulty being around large groups of people. R. 903. She has crying spells at least every day. R. 904.

**V.     DISCUSSION**

As noted, above, Plaintiff contends that the ALJ erred in his consideration of Dr. Jackson's opinions. An ALJ must consider all medical opinions in evaluating a claimant's application for benefits. 20 C.F.R. § 404.1527(c). Under the regulations applicable to claims, like Plaintiff's, filed before March 27, 2017, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and

the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

If the opinion of a treating medical source is not accorded controlling weight, the ALJ must then consider the following factors in deciding the weight to be given to that opinion: the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion is with the record as a whole, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

In his decision, the ALJ exhaustively summarized the evidence of record. R. 870-75. In considering Dr. Jackson's May 2016 opinions, the ALJ first properly articulated the applicable standards governing the evaluation of treating providers' opinions. R. 876-77. The ALJ declined to give controlling or deferential weight to Dr. Jackson's opinions and instead concluded that her opinions were entitled to "only little weight":

> While Dr. Jackson is a physician, she is the claimant's family physician and is not a neurologist or other specialist who is uniquely qualified to assess the severity of any residuals of the claimant's West Nile infections or a psychiatrist who can more thoroughly describe the extent of the claimant's mental health problems. There are also the factors of supportability and consistency. The record only documents three encounters with Dr. Jackson over the period of a year, with the last occurring the day she completed this questionnaire. In the examination records, the claimant had normal physical and mental examinations except for anxious and depressed mood at the first visit and a muscle spasm which responded well to a Kenalog injection at the final visit. The record shows that the

> claimant does have some headache complaints but Dr. Jackson's own records do not document debilitating headache pain either with respect to the frequency or severity of the claimant's headache complaints. As such, they do not support her conclusion that the claimant could be expected to be absent an average of three times per month or that the claimant would be off task two-thirds of the time. Dr. Jackson is also the only physician who has indicated that any such limitations are necessary in this case. The assessments of Dr. Oza, an examining physician, Dr. Myers, an examining psychiatrist, and the assessments of the state agency reviewing physicians and psychologists do not portray the claimant as nearly so limited. As discussed thoroughly herein, the examinations of the claimant's subsequent primary care physician, Lisa Heinemeyer-Foster, M.D., also document no extreme or even marked difficulties which would reasonably support the conclusions of Dr. Jackson. The claimant's therapist likewise found little abnormality and attempted to prompt the claimant to find a purpose and pursue it. Evaluating Dr. Jackson's opinion under the then existing treating physician rule, her assessment cannot be given controlling or deferential weight and is instead entitled to only minimal weight.

R. 877 (citations to record omitted). The ALJ also expressly considered Dr. Jackson's May 2015 opinion:

> This questionnaire was completed at the first examination the claimant had with Dr. Jackson. As noted above, the minimal documentation of some anxiety and depression at the associated examination is incongruent with the resultant findings. In spite of having access to the records of Dr. Bhat, which showed little to no physical abnormality, Dr. Jackson here included a restriction for sitting. No examination findings support this and the claimant's occasional comment that she is unable to "sit still" appears to be the basis for this. However, instead of an inability to sit, literally, the claimant's use of this phrase in testimony and the like appears to be a euphemism for some anxiety symptoms she experiences. Dr. Jackson's use of such phrasing appears to be a recitation of the claimant's subjective complaints instead of Dr. Jackson's examination observations, which were overall normal aside from an anxious and depressed mood, and they are vague at best. In consideration of the above factors, this is given little weight.

*Id*. (citations to record omitted). This Court concludes that the ALJ's assessment of Dr. Jackson's opinions conformed to the applicable regulation, 20 C.F.R. § 404.1527, enjoys substantial support in the record, and is sufficiently specific to give the litigants and this Court a clear understanding of the ALJ's reasons for his assessment. Referring to specific evidence in the record, the ALJ expressly found that Dr. Jackson's opinions were not supported by her own

treatment records and were not consistent with the record as a whole. Having made that finding, the ALJ properly concluded that this treating physician's opinions were not entitled to controlling weight. *See Gayheart*, 710 F.3d at 376. Having reach that conclusion, the ALJ also properly determined the actual weight to be given her opinions by considering the factors outlined in 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ's findings in this regard enjoy substantial support in the record. This Court must therefore defer to those findings even though, as Plaintiff points out, there is also substantial evidence in the record that would support an opposite conclusion. *See Emard*, 953 F.3d at 849; *Blakley*, 681 F.3d at 406; *Key*, 109 F.3d at 273.

## VI. CONCLUSION

**WHEREUPON**, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 10, and **AFFIRMS** the Commissioner's decision The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  July 22, 2022                              *s/Norah McCann King*
                                                    NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE